UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

TYRONE GRANT

**MAGISTRATE JUDGE VALDEZ**

CRIMINAL COMPLAINT

CASE NUMBER:

**08CR 752**

I, Charles Adam, the undersigned complainant, being duly sworn, state that the following is true and correct to the best of my knowledge and belief.

On or about September 22, 2008, at Chicago, in Cook County, in the Northern District of Illinois, defendant TYRONE GRANT, by force and violence, and by intimidation, took, from the person and presence of a bank employee, money in the care, custody, control, management and possession of Shore Bank, 3401 South King Street, Chicago, Illinois, the deposits of which were then insured by the Federal Deposit Insurance Corporation, namely, approximately $6,026.00 in United States Currency, in violation of Title 18, United States Code, Section 2113(a).

I further state that I am a Special Agent of the Federal Bureau of Investigation and that this complaint is based upon the following facts:

See Attached Affidavit.

Continued on the attached sheet and made a part hereof: __X__ Yes ____

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

September 23, 2008                    at    Chicago, Illinois
Date                                         City and State

Maria Valdez, United States Magistrate Judge         _____
Name & Title of Judicial Officer                      Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, CHARLES ADAM, being duly sworn, state as follows:

1. I am a Special Agent of the Federal Bureau of Investigation ("FBI"), and have been so employed since 2006. I am presently assigned to the Violent Crimes Task Force ("VCTF") in the FBI's Chicago Field Office, and my duties include the investigation of various violent crimes, including bank robberies.

2. The information contained in this affidavit is based upon my personal knowledge, my participation in this investigation, information gathered from other law enforcement officers and bank employees, and information gained through my training and experience. The information outlined below is provided for the limited purpose of establishing probable cause in support of a criminal complaint and does not contain all details or all facts of which I am aware that relate to this investigation.

3. On September 22, 2008, at approximately 3:20 p.m., a lone black male robbed a teller at the Shore Bank, located at 3401 South King Street, Chicago, Illinois, of approximately $6,026.00 in United States Currency ("U.S.C."). This amount was determined through a subsequent accounting of the teller's drawer by the bank. Through my investigation, I have learned that the funds on deposit at Shore Bank were then and are now insured by the Federal Deposit Insurance Corporation.

4. The robber entered the bank and approached a victim teller ("Teller A"). The robber handed a demand note to Teller A, and ordered her to give him money. The robber's actions startled Teller A, who turned and walked away from her teller's window. The demand note has not been recovered by law enforcement to date.

5. The robber then moved to the adjacent teller's window and addressed a

second victim teller ("Teller B"). The robber displayed a knife with an orange handle and demanded money. Teller B removed approximately $6,026.00 from her teller drawer and placed it in the robber's black bag.

6. Two bank security officers ("Security Officer A" and "Security Officer B") approached the robber with their weapons drawn and ordered the robber to stop. The robber fled the bank through the north entrance and proceeded on foot south through a parking lot toward 35th Street. Security Officer A followed the robber on foot while broadcasting his and the robber's positions to Security Officer B via radio. Security Officer A never lost sight of the robber and remained within approximately 20 feet of the robber at all times. Security Officer B notified the Chicago Police Department ("CPD") of the bank robbery and pursuit in progress.

7. When the robber reached 35th Street, he turned west and headed toward King Drive. The robber then removed an unknown amount of U.S.C. from his bag and tossed it into the street. Witnesses to the incident ran into the street and retrieved some of the money. Law enforcement officers were unable to locate these witnesses.

8. Security Officer B advised the responding CPD officers that Security Officer A had last reported to him by radio that he and the robber were outside the White Castle restaurant on 35th Street and King Drive. The responding officers proceeded to that location, arriving within a few minutes of the robbery. There, the officers discovered Security Officer A with his weapon drawn, ordering a black male to stop moving and to get on the ground. The CPD officers took this individual into custody. The officers discovered a knife with an orange handle on the ground in close proximity to where they apprehended the individual. The individual had a black bag in his possession containing approximately

$2,248.00 U.S.C. The officers recovered approximately $14.00 U.S.C. from the ground on 35th Street.

9. The CPD officers identified the individual as TYRONE GRANT and transported him to the CPD 1st District. Fingerprints taken from this individual confirmed his identity as TYRONE GRANT. Photographic surveillance images obtained from the bank show an individual leaving the bank who matches the appearance of TYRONE GRANT.

10. I and other members of the VCTF responded to the 1st District to interview GRANT. VCTF members advised GRANT orally and in writing of his Miranda rights. GRANT agreed to and did waive his rights, both orally and in writing. After waiving his Miranda rights, GRANT submitted to an interview.

11. GRANT provided the following oral statement to members of VCTF. On the morning of September 22, 2008, GRANT took the bus to his brother's residence located at 1504 West 163rd in Markham, Illinois. GRANT retrieved a knife from the residence and traveled by public transportation from the residence to the Shore Bank, located near 35th Street and King Drive. While riding the bus to the bank, GRANT wrote a note demanding that money be given to him. GRANT entered the bank and approached an open teller window. GRANT provided the note he had written to the teller at the window and demanded she give him money. GRANT stated the teller panicked and ran from the teller's counter. GRANT proceeded to the adjacent teller's window and verbally demanded that she give him money. GRANT placed the knife he retrieved from his brother's residence on the teller's counter. The bank teller placed the money in a black bag that GRANT brought with him to the bank. GRANT fled the bank on foot and was aware that

he was being followed by a security guard. GRANT removed money from his bag and threw it into the street.

12. Based on the foregoing facts, there is probable cause to believe that TYRONE GRANT did, by force, violence or intimidation, take approximately $6,026.00 in U.S.C. in the care, custody, control, management, or possession of the Shore Bank branch office located at 3401 South King Drive, Chicago, Illinois, the deposits of which were then insured by the Federal Deposit Insurance Corporation, in violation of Title 18, United States Code, Section 2113 (a).

FURTHER AFFIANT SAYETH NOT.

CHARLES ADAM
Special Agent
Federal Bureau of Investigation

SUBSCRIBED AND SWORN TO BEFORE ME
this 23rd day of September, 2008.

MARIA VALDEZ
United States Magistrate Judge